NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0465n.06

Case No. 25-1171

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Oct 15, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| DARRYL BROADNAX, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| RHOMBUS ENERGY SOLUTIONS, INC., | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | OPINION |

Before: THAPAR, READLER, and HERMANDORFER, Circuit Judges.

HERMANDORFER, Circuit Judge. Rhombus Energy Solutions hired Darryl Broadnax as a production manager in its manufacturing plant. As it turns out, Broadnax secured that job by fabricating his managerial and educational experience. And soon after Broadnax began work, his on-the-job behavior sparked a series of complaints. Citing those performance issues, Rhombus terminated Broadnax's employment. Broadnax then sued Rhombus under Title VII and Michigan law. He claims that Rhombus fired him not for performance reasons, but because of his race, religion, and reporting of a co-worker's racially insensitive language. The district court granted summary judgment for Rhombus on all claims. We affirm.

I

In early 2022, Rhombus sought to hire a production manager for its manufacturing facility in Dearborn, Michigan. The job posting listed "five (5) years of production management experience in plant/manufacturing environment" as among the position's minimum requirements.

Job Description, R.20-14, PageID 495. A college degree in business administration or a related field was preferred. Darryl Broadnax, who is black and Muslim, applied for the production-manager position by sending a resume through an online job-listing service.

In the resume's telling, Broadnax's background was ideal. The resume boasted an extensive, 20-year track record as a production manager at an automotive company, as well as degrees in computer-information systems and "[i]nstrumentation." Resume, R.20-6, PageID 464. Broadnax's resume caught the attention of Rhombus's HR manager, Courtney Davis, and director of operations, Scott Stromenger, who interviewed and hired Broadnax in April 2022.

Almost as soon as Broadnax "first arrived" on the job, employee relations at Rhombus went south. Davis Dep., R.20-3, PageID 422. Broadnax confronted an employee about the timing of his lunch breaks, even though Broadnax didn't supervise the employee and was wrong about Rhombus's break policy. Broadnax disciplined a different employee for returning from lunch only three minutes late. And Broadnax directed a production supervisor to "write up" an employee for talking on the production floor, a measure the production supervisor didn't support. In general, Rhombus management felt that Broadnax was "being too aggressive with the employees." Stromenger Dep., R.20-2, PageID 406.

Broadnax had his own complaints. In mid-May 2022, he objected to HR after a coworker, Russ Pulter, used the word "colored" to describe black individuals. Broadnax also reported that other employees considered Pulter a racist. Davis, herself a black manager at Rhombus, investigated the incident. She concluded that Pulter used the word while "telling a story" about the segregation policies of his "high school" without any "racial intent." Davis Dep., R.20-3, PageID 421, 429. She further determined that Broadnax had "fabricat[ed]" employees' complaints about Pulter. *Id.* at PageID 426.

Meanwhile, episodes involving Broadnax continued to pile up. A female employee told HR that Broadnax treated her differently from other employees; multiple employees had run-ins with Broadnax; and he took credit for another employee's work. Broadnax's conduct led to a "mutiny out on the production floor"; Rhombus "was going to lose several key employees due to his harassment and the way that he talked to people." Stromenger Dep., R.20-2, PageID 409.

Problems culminated in mid-June. After Broadnax gave "written counseling" to an employee without proper authorization, HR instructed Broadnax not to engage in further discipline of any employees absent HR's approval and involvement. Yet the next day, Broadnax terminated the employee in contravention of HR's instructions. The "last straw," in Rhombus's view, came when Broadnax went "way over the top" in confronting a female employee about her attire—attire that Rhombus later concluded did not violate any dress-code provision. *Id.* at PageID 411.

Rhombus sent Broadnax a termination letter dated June 17, 2022. The letter cited "several documented incidents" over the previous two months that "demonstrate[d] that" Broadnax was both "unable to perform" the "job functions" of a "Production Manager" and "unwilling to follow Rhombus' policies." Termination Letter, R.20-13, PageID 493. Broadnax, the letter noted, had terminated an employee "in violation of Rhombus policies," used "intimidating / harassing tactics with subordinates," "[d]isciplin[ed] employees without justification" or "fail[ed] to appropriately communicate and deliver disciplinary actions" on "5 occasions," used "a confrontational tone" or engaged in "bullying" on "5 occasions," and twice "[f]abricat[ed] claims of discrimination" or "behavior by other employees." *Id.*

In response, Broadnax sued Rhombus under Title VII of the Civil Rights Act of 1964 and Michigan's Elliott-Larsen Civil Rights Act (ELCRA). He asserted claims of race- and religious-based discrimination, retaliation, and a hostile work environment. During discovery,

Broadnax admitted that he falsified the resume he submitted to Rhombus for the production-manager role. Broadnax didn't have decades of management experience or a college degree. In reality, he'd been fired from a series of jobs, completed only a few college courses, and had an extensive criminal history. Broadnax, however, says that Stromenger knew about Broadnax's lack of experience and hired him anyway. Stromenger denies that account.

The district court granted summary judgment for Rhombus on all claims. It reasoned that Broadnax failed to establish a prima facie case of race or religious discrimination because he lacked qualifications for the job and that, in any event, Broadnax failed to show that Rhombus's proffered performance-related reasons for firing him were pretextual. As to the retaliation claim, the district court determined that Broadnax had insufficient evidence that Rhombus fired him because he engaged in protected activity. And it "dismissed" Broadnax's hostile-work-environment claim—even though the "parties" had not "directly addressed" that claim—because the record lacked evidence of the "severe and pervasive conduct" that claim requires. D. Ct. Op., R.26, PageID 601-02. Broadnax timely appealed, and we have jurisdiction. 28 U.S.C. § 1291.

II

We review the district court's summary-judgment ruling de novo. *Colson v. City of Alcoa*, 37 F.4th 1182, 1186 (6th Cir. 2022). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e give the non-moving party"—here, Broadnax—the "benefit of all reasonable factual inferences." *Bivens v. Zep, Inc.*, 147 F.4th 635, 642 (6th Cir. 2025). But Broadnax "still must counter [Rhombus's] initial showing by identifying 'significant probative evidence' on which the jury could reasonably find" for him. *Id.* (citation omitted). And "we won't accept mere conjecture and speculation." *Patterson v. Kent State Univ.*, --- F.4th ----,

4

2025 WL 2630307, at \*4 (6th Cir. 2025).  The "nonmoving party" instead must offer "significant probative evidence putting the material facts in doubt." *Id.* (citation omitted).  We may "affirm on any ground supported by the record and raised below." *Id.*

III

Broadnax asserted claims of racial and religious discrimination, retaliation, and a hostile work environment.  We affirm the grant of summary judgment to Rhombus across the board.

A

We start with Broadnax's discrimination claims.  Title VII and ELCRA prohibit employers from discriminating on the basis of race or religion.  *See* 42 U.S.C. § 2000e–2(a)(1); Mich. Comp. Laws § 37.2202(1)(a).  Broadnax does not discuss his religious-discrimination claims on appeal, meaning he has "forfeited appellate review" of those claims.  *Bryant v. McDonough*, 72 F.4th 149, 151 (6th Cir. 2023).  We thus focus our analysis on Broadnax's claim of race-based discrimination.

In support of his race-based claim, Broadnax seeks to rest exclusively on circumstantial evidence of discrimination.  So we apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  That framework governs both Title VII and ELCRA claims.  *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606-07 (6th Cir. 2019); *Rouch World, LLC v. Dep't of Civil Rights*, 987 N.W.2d 501, 507 (Mich. 2022).

Under *McDonnell Douglas*, "the plaintiff has the initial burden of establishing his or her prima facie case by demonstrating that (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (citation omitted).  If the plaintiff does so, the burden "shifts to the employer

5

to offer a legitimate, non-discriminatory explanation for its actions." *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). The burden then "shifts back to the plaintiff to show pretext"—meaning "that the employer's explanation was fabricated to conceal an illegal motive." *Id.*

The district court first rejected Broadnax's claim on the basis that he lacked the required qualifications for the position. Rhombus argues the same. But Broadnax insists that Stromenger knew about his lack of experience and hired him anyway—an assertion Stromenger denies. On review, though, we can steer clear of that who-knew-what-when thicket. That's because we agree with the district court's alternative holding that Broadnax failed to demonstrate that Rhombus's legitimate, nondiscriminatory reasons for firing him were pretextual. And that analysis suffices to reject Broadnax's discrimination claims.

Rhombus asserts that it terminated Broadnax due to his repeated poor performance and disregard of Rhombus's policies. Put simply, Broadnax's lack of managerial experience showed early and often. *See supra* pp. 2-3 (collecting incidents). And Rhombus's summary-judgment evidence—ranging from disciplinary forms, to a documented chronology of incidents involving Broadnax, to deposition testimony from multiple employees—supports that the company fired Broadnax because of his demonstrated poor performance. That asserted justification constitutes a legitimate, nondiscriminatory basis for Broadnax's termination. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008).

To carry his case forward, Broadnax needed to respond with "sufficient evidence" to show that Rhombus's performance-based explanation was merely a pretext for discrimination. *Chen*, 580 F.3d at 400. "Mere personal beliefs, conjecture and speculation" do not suffice. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006) (cleaned up). Instead, a

plaintiff can establish pretext by demonstrating "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen*, 580 F.3d at 400. Those categories converge around "a commonsense inquiry: did the employer fire . . . the employee for the stated reason or not?" *Davis v. Cintas Corp.*, 717 F.3d 476, 492 (6th Cir. 2013) (citation omitted).

Broadnax's pretext argument fails from start to finish. Out of the gate, Broadnax's brief lacks even a "single legal authority" in support of its pretext assertions. *Zep*, 147 F.4th at 649. That failing "alone gives us ample reason to affirm." *Id.* Nor does the pretext argument fare any better on its own terms. Best we can tell, Broadnax presses three main pretext arguments. None succeeds.

*First*, Broadnax argues that Rhombus lacked support for its performance-related justification because it failed to contemporaneously document all of Broadnax's transgressions. But it's not enough for Broadnax to critique Rhombus's recordkeeping. To show pretext "on the ground that the reason for termination had no basis in fact," he needed to "provide evidence that the employer's allegations never happened." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021) (citation omitted). Yet Broadnax fails to put forward evidence to indicate that Rhombus contrived the cited performance problems.

*Second*, Broadnax protests that the district court should have excluded as hearsay a Rhombus exhibit summarizing his workplace incidents. But Broadnax makes no "effort to develop" this argument beyond a single-sentence mention, so it's forfeited. *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013). And, in any event, Broadnax does not explain how the district court erred in concluding that the chart's contents would be admissible at trial "as a business record," D. Ct. Op., R.26, PageID 596—and thus eligible for consideration at

7

the summary-judgment stage, *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 430 (6th Cir. 2018). Nor would his chart-centered argument move the needle anyway, given Rhombus's other unrebutted evidence.

*Third*, Broadnax cites a declaration provided by one of his former nonmanagerial coworkers. That declaration echoes Broadnax's assertions that Rhombus fired Broadnax "because he was Black," generally "[t]reated white employees better," and "[d]emean[ed] Black individuals in authority positions." Broadnax Br. 23-24 (citing Stephens Decl., R.23-1, PageID 542-43). But "vague assertion[s] that there was a general attitude of discrimination" at Rhombus are "insufficient to establish pretext." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 761 (6th Cir. 2000). The same goes for "[m]ere personal beliefs, conjecture and speculation." *Grizzell*, 461 F.3d at 724 (citation omitted). Broadnax cannot circumvent those rules by re-packaging his generalized allegations of racism through a secondhand declaration.

At bottom, Broadnax "has not produced evidence from which a reasonable factfinder could doubt that [he] was fired for performance-related reasons." *Chen*, 580 F.3d at 402. We thus affirm the district court's grant of summary judgment to Rhombus on Broadnax's discrimination claims. And while we apply *McDonnell Douglas*, on this record our conclusion would hold even under Broadnax's preferred framework of asking whether he's presented a "genuine dispute" that race rather than performance motivated his firing. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 322 (2025) (Thomas, J., concurring) (quoting Fed. R. Civ. P. 56(a)).

B

Broadnax also brought a retaliation claim under ELCRA, which makes it unlawful to "[r]etaliate . . . because the person has opposed a violation of [ELCRA]" or "filed a complaint." Mich. Comp. Laws § 37.2701(a). He asserts that Rhombus terminated him because he complained

to HR in mid-May 2022 about Pulter using the term "colored" when telling a story involving black individuals.

On this claim, the record likewise supports the district court's grant of summary judgment to Rhombus. The framework for analyzing an ELCRA-based retaliation claim is "identical" to that under Title VII. *Redlin*, 921 F.3d at 614 (citation omitted). Most relevant here, the "pretext analysis is the same for discrimination and retaliation claims under both Title VII and ELCRA." *Beny v. Univ. of Mich.*, 2025 WL 2124175, at *7 (6th Cir. July 29, 2025); *see also Redlin*, 921 F.3d at 616.

As discussed, Rhombus cited numerous performance-related incidents that led to Broadnax's firing—including many that occurred after his alleged report regarding Pulter. Yet Broadnax has not put forward evidence to show that Rhombus's cited performance reasons were pretextual rather than the actual basis for the firing. As with his discrimination claim, Broadnax's inability to show pretext means that his retaliation claim "must fail." *Beny*, 2025 WL 2124175, at *10. We can affirm the district court's decision on that alternative basis alone. *Patterson*, --- F.4th at ----, 2025 WL 2630307, at *4.

C

Broadnax also brought a hostile-work-environment claim under ELCRA. The district court, acting sua sponte, granted summary judgment to Rhombus on the basis that Broadnax failed to "allege[] conduct that could be viewed as creating a hostile work environment based upon his race or religion." D. Ct. Op., R.26, PageID 602. Though we've previously "discouraged" district courts from granting summary judgment "on grounds not raised or argued by the parties," *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) (cleaned up), we affirm the disposition here.

9

Our review follows from Rule 56(f)(2) of the Federal Rules of Civil Procedure. That provision directs that, "[a]fter giving notice and a reasonable time to respond," a district court may grant summary judgment "on grounds not raised by a party." Fed. R. Civ. P. 56(f)(2). We review such sua sponte decisions for "abuse of discretion." *Smith*, 708 F.3d at 828. To prevail, Broadnax must demonstrate that he lacked "sufficient notice of the possibility that summary judgment could be granted against" him and "suffered prejudice as a result." *Id.* at 829 (citation omitted).

Even assuming a lack of notice, Broadnax has failed to establish prejudice. His opening brief merely contends that he "was prejudiced" because he "had no opportunity" to make his hostile-work-environment arguments. Broadnax Br. 16. That's not enough. Broadnax had to "demonstrate[] that [he] could have produced new favorable evidence or arguments had more notice been given." *Smith*, 708 F.3d at 831 (citation omitted). But "he identifies nothing that he 'could have produced' that would have changed the outcome." *Good v. Walworth*, 2023 WL 9320823, at *4 (6th Cir. Aug. 22, 2023) (quoting *Smith*, 708 F.3d at 831). Nor does he "state what arguments [he] would have presented had notice been afforded." *Smith v. Erie Cnty. Sheriff's Dep't*, 603 F. App'x 414, 423 (6th Cir. 2015). Broadnax therefore forfeited his prejudice argument—forfeiture he cannot salvage with belated mention of the issue in reply. *See Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021). He has likewise forfeited appellate review of the merits, as he makes only a passing effort in reply to explain why the district court's substantive analysis was wrong under this Court's caselaw. *Id.*

\* \* \*

We affirm the judgment of the district court.